## DEFORD *against* MILLER.

Words which impute a crime are actionable, not more because they expose the party charged to the danger of being convicted, than of being prosecuted.

If the charge be not palpably unfounded on the face of it, the risk of a prosecution which it induces, shall be compensated in damages.

It is not competent for a defendant to show by circumstances *dehors* the libel, that he was mistaken in the charge he made, and thereby avoid a liability for damages.

ERROR to the Common Pleas of *Fayette* county.

This was an action on the case for a libel, in which *Jacob B. Miller* was plaintiff, and *John H. Deford* was defendant. An action was pending between *Mitchell* and *Snyder* in which an award of arbitrators had been made, which there was a motion to set aside, on the ground of the misconduct of one of the arbitrators. To establish the fact, upon which it was sought to set aside this award, the deposition of *Jacob B. Miller* was taken, and sworn to *before the prothonotary.* It was this deposition which the defendant referred to in the alleged libel which was the foundation of this action. It was in these words:

"As the case above stated is one in which *Miller* and *Todd* have been concerned, I have thought proper to notice it. This I should not do, were nobody responsible for it but that profligate and lying creature, the editor of the Democrat. To his lies, after refuting the most infamous he could invent against me, I have already determined to pay no further attention. If I had not, I would publish his affidavit, which he filed in the court of this county, in the case of *Snyder,* and which has become a public record; to which affidavit there stands opposed the oaths of two respectable men; and then ask the people to name the *offence* of which he *is guilty.* In law it would be called PERJURY."

The defence in the court below, which gave rise to the only question of law which was argued here was, that the publication was not actionable, because it did not charge the plaintiff with a legal perjury, inasmuch as it appeared, that the affidavit referred to had been made before one who had no power to administer an oath; it was therefore extra-judicial. The court (*Baird,* president,) being of a different opinion, so instructed the jury; who found a verdict for the plaintiff.

*W. Wilkins* for plaintiff in error;

In support of the position above stated, cited *Holt on Libel,* 188. *Van Ranselaer* v. *Dole,* 1 *Johns. Ca.* 279.

*W. Forward* for defendant in error.

The words written are the evidence, whether the libel is actionable or not. It is not competent for a defendant to give in evidence circumstances *dehors,* to show that he was mistaken in the charge

(Deford *v.* Miller.)

he made. The only question is, how was it understood by readers? *Eckart* v. *Wilson,* 10 *Serg. & Rawle,* 44.

The opinion of the court was delivered by

GIBSON, C. J.—Though no satisfactory reason is any where given, why words may be actionable when written, which are not so when spoken, it seems to be established, that wherever the public may punish by indictment, the individual may have redress by action. If, however, the words here impute an actual perjury, the exception to the manner in which they are laid, as not affording an independent ground of action for written slander, is superseded. Giving them, then, the effect of words spoken, and no more, the substantial part of the publication is an assertion that the plaintiff had made an affidavit in a particular cause, to which the defendant alleges, "there stands opposed the oaths of two respectable men;" and a remark that if the defendant had not determined to pay no further attention to the plaintiff, he would publish his affidavit, "and then ask the people to name the offence of which he is guilty. In law," he subjoins, "it would be called PERJURY." Is not that a positive accusation? He is guilty of an offence, says the defendant, and in law it would be called perjury. A charge thus made seems to be more affirmatively conveyed than by the words held actionable in *Edie* v. *Brooks, Whart. Dig.* 704, *pl.* 32, where the defendant said to the plaintiff, in reference to a supposed taking of his meal by the latter: "If I had served you so, you would have called it stealing." Divested of all other circumstances, then, the words here would be actionable in themselves; and did any thing accompany them in the publication, which could have the effect of restraining the generality of the charge in the conclusion? The words are laid as having been published in reference to an affidavit sworn to in vacation before the prothonotary, in a matter not determinable by him; and let it be taken for granted, that the oath thus taken was extra-judicial; it will still be difficult to see what effect that could have had on the import of the accusation in the apprehension of those who heard or read it. In principle, the case seems to be precisely that of *Eckart* v. *Wilson,* 10 *Serg. & Rawle,* 44, in which a right of action for the words, "You have killed *Bob Waters*—you have poisoned him, and I can prove it," was ineffectually attempted to be repelled, by the extrinsic fact that *Bob Waters* was still alive. In that case, the plaintiff had been charged with the murder of a living man; in this, he has been charged with perjury in an extra-judicial oath: in the one, the commission of the crime charged was rendered impossible by matter of fact; and in the other, it is made so by matter of law; and if there is any further difference between them, I am unable to perceive it. That the difference, if any, is to be disregarded, appears from *Charnel's*

(Deford *v.* Miller.)

*Case, Cro. Eliz.* 279, in which to an action for saying: "My tur-
kies are stolen, and *Charnel* hath stolen them;" it was objected,
that as the speaker of the words was a *feme covert,* and without
capacity to be the owner of the things said to have been stolen, it
was impossible in law that the charge could be true; but the court
refused to sustain the objection, "because," as it was said, "she had
charged him with STEALING; and if one which hath no horse," it
was added, "saith: 'I. S. hath stolen my horse,' this is as great dis-
credit as if he had one, FOR EVERY ONE KNOWETH NOT WHETHER
HE HAD A HORSE OR NOT." In like manner, they who read the
publication in the case before us, may not have known whether the
oath in which the perjury is alleged to have been committed, were
extra-judicial or not; nor could they be expected to incur the trou-
ble and expense of an inquiry into the fact, granting them compe-
tent to determine it on a view of the record. The reason given
for the decision in *Charnel's Case,* is founded, not merely in good
sense, but the technical principles of the action. Words which im-
pute a crime are actionable, not more because they expose the party
charged to the danger of being convicted, than of being prosecuted,
which even to the innocent, is a grievance; and in every instance
where the meaning of what would otherwise have been an unam-
biguous accusation, has been controlled by circumstances which
showed it to be groundless, and thus rendered it harmless: the con-
trolling circumstances were so mingled with the accusation by the
accuser himself, as to make the poison carry its antidote along with
it. The decisions by which the doctrine of repugnancy was for-
merly carried to an extravagant length, have ceased to be prece-
dents; and the rule now seems to be, that if the charge be not pal-
pably unfounded on the face of it, the risk of a prosecution which
it induces, shall be compensated in damages. Here the charge
might have been well founded, for aught that appeared in the publi-
cation by which it was promulgated; and the plaintiff may have his
action for the danger to which it exposed him. But it has been
said, that whatever may be the right of action in the abstract, yet
it appears by the plaintiff's own showing in the pleadings, that the
oath to which the publication had reference, was not the subject of
perjury. Were it indeed laid that the defendant himself had so
discribed it in the offensive publication, the plaintiff would have
shown himself to be without a cause of action. He has, however,
set out the publication exactly as it was made, having stated as mat-
ter of inducement the nature of the affidavit to which it relates;
but this matter of inducement may be struck out of the declaration,
without prejudice to the cause of action which is fully stated with-
out it. A word which does not necessarily import criminality, is,
in pleading, rendered actionable only by reference to extrinsic facts,
which show it to have been used in an obnoxious sense: thus the

(Deford *v.* Miller.)

word 'forsworn' becomes actionable when shown to have been predicated of one who had given testimony under the sanction of a judicial oath; and hence the necessity of a colloquium about the time, place, and circumstances. But when the charge is conveyed by a generic term, which unequivocally denotes the presence of every fact necessary to constitute the offence, a reference to extrinsic matters, in order to fix its meaning, is unnecessary. Here the plaintiff was accused, not of false swearing, but of perjury—a word which expresses with technical precision, every thing comprised in the offence—and consequently a reference to the particular oath, in order to show it to have been taken in a judicial proceeding, is surplusage. But giving it all the effect of which it is susceptible, it is but an admission that the plaintiff was not in actual danger of being convicted, which is entirely consistent with his having been exposed to the danger of a prosecution. Beside, I know not how words which are actionable in themselves, can be made otherwise by being laid according to the truth of the whole case. The words of the publication, then, being actionable, there is nothing in the manner of laying them, or in the direction in respect to the proof of them or their legal effect, which requires us to disturb the judgment.

Judgment affirmed.